CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 30 2013

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MALCOLM MUHAMMAD,<br>    Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:12cv00043 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| DR. L. TATRO *et al.*,<br>    Defendants. | ) <br> ) <br> ) | By: Samuel G. Wilson<br>United States District Judge |

    Plaintiff Malcolm Muhammad, a Virginia inmate proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate dental care. By memorandum opinion and order entered August 10, 2012, on defendants' motions to dismiss, the court dismissed all of Muhammad's claims except that which arose out of absent dental treatment between late March and August 16, 2011. See ECF Nos. 28 and 29. Defendants have filed motions for summary judgment concerning the remaining claim and Muhammad has filed responses in opposition thereto, making this matter ripe for disposition. For the reasons stated herein, the court grants defendants' motions for summary judgment.[1]

I.

    On January 5, 2011, Muhammad saw Dr. Tatro regarding his upper denture, which had split. The upper denture was repaired and returned to Muhammad the same day for him to use until a new upper denture could be made for him. On February 14, 2011, as soon as the laboratory had made the prototype for Muhammad's upper denture, Muhammad saw Dr. Tatro for a "try in" of the prototype denture to ensure proper fit before the actual denture was made.

---

[1] Muhammad has also filed a motion to amend his complaint in which he tries to revive his claims concerning dental treatment between August 17, 2011 and December 2011. However, the court already dismissed these claims against the named defendants for failing to state a constitutional claim and Muhammad presents no new material facts that would change the court's previous analysis. Because Muhammad's allegations in his motion to amend still fail to state a claim of constitutional magnitude for the same reasons stated in the court's August 10, 2012 memorandum opinion and order, an amendment to Muhammad's complaint to revive these claims would be futile. Accordingly, the court denies Muhammad's motion.

On March 10, 2011, Muhammad submitted an Offender Request for Information, requesting that Dental Assistant Givens advise the Dentist that Muhammad needed dental treatment due to a broken tooth that he claims was cutting his tongue.[2] Givens acknowledged Muhammad's request on March 16, 2011 and wrote, "I will tell the dentist."

On March 21, 2011, Muhammad saw Dr. Tatro and received his permanent upper denture. Muhammad alleges that he also showed Dr. Tatro his "bad tooth" at this appointment and that Dr. Tatro said he would call Muhammad about it soon. Dr. Tatro states that Muhammad did not report any dental problem and that he saw no dental problem of any significance or any problem with Muhammad's tongue.

On March 24, 2011, Muhammad submitted a Request for Medical Services stating that he wanted a broken tooth pulled, that eating hot or cold food caused him pain, and that he did not want it to become infected.[3] Givens responded to Muhammad's request on March 28, 2011, indicating that it had been received. Givens states that, upon receiving Muhammad's request, she added Muhammad's name to the list of inmates awaiting routine dental services. Muhammad submitted no other requests, complaints, or grievances (regular or emergency) concerning dental care between March 24, 2011 and August 16, 2011. On August 16, 2011, Muhammad saw Dr. Tatro pursuant to his March 24, 2011 request. When Dr. Tatro x-rayed Muhammad's mouth in August, he discovered that Muhammad had two other abscessed teeth on the other side of his mouth.[4] Dr. Tatro states that Muhammad's broken tooth was not abscessed

---

[2] According to Dr. Tatro's affidavit, Muhammad's tooth was "'broken' in the sense that part of the enamel around the filing had been lost with the filling, but was not something that would have cut his tongue nor caused him any problem of significance . . . ."

[3] The court notes that the form which Muhammad submitted clearly states that if the inmate is experiencing an emergency, he should "notify [his] floor officer immediately." There is no evidence that Muhammad notified the floor officer of any dental emergency.

[4] Dr. Tatro states that the two abscessed teeth "appeared to be of a longstanding chronic nature" and that Muhammad did not complain about any pain from those teeth.

or infected. Dr. Tatro prescribed an antibiotic as a prophylactic for the two abscessed teeth in preparation for future dental work. In September, when Dr. Tatro saw Muhammad to extract the abscessed teeth, which he classified as the "priority from a dental perspective," Dr. Tatro asked Muhammad which side of his mouth he preferred that Dr. Tatro treat first[5] and Muhammad requested extraction of the broken tooth before the two abscessed teeth.[6] Dr. Tatro extracted Muhammad's broken tooth in September and his abscessed teeth at a later appointment.

Givens is responsible for scheduling dental appointments for inmates at Wallens Ridge State Prison ("WRSP"). Pursuant to DOP 720.6, Section VIII(C)(1), access to routine dental care is "equitably controlled by use of an appointment book" and inmates will be called according to the chronological date on their request form.[7] According to Givens, there are approximately 200 inmates on the waiting list for routine dental services at WRSP and the wait time is approximately five months. Further, Givens states that if an inmate has an emergency dental issue, he should submit an emergency grievance to receive expedited dental treatment.

## II.

Muhammad alleges that the defendants were deliberately indifferent to his dental needs by failing to provide him with treatment between late March and August 16, 2011. The court finds that Muhammad has not demonstrated that the defendants were deliberately indifferent to a serious medical need and, therefore, grants the defendants' motions for summary judgment.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a

---

[5] Dr. Tatro states that "as a dentist, [he] only want[s] to numb one side of a patient's mouth to work on at a time, because numbing both sides of the mouth, which also numbs the jaw and tongue, affects a patient's functional abilities such as swallowing, talking, eating, and drinking."

[6] The court notes that Muhammad signed a Refusal to Consent to Treatment form because he chose to have the broken tooth extracted against Dr. Tatro's recommendation that the abscessed teeth be treated as a priority.

[7] The court notes that DOP 720.6, Section IV(H), specifically classifies tooth extractions and sensitivity to hot and cold temperatures as circumstances requiring routine dental treatment.

3

serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Mere negligence does not constitute deliberate indifference, rather a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); see also Farmer, 511 U.S. at 837. The officer's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Militier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell, 528 F.2d at 319; Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). A delay in receiving medical care, with no resulting injury, does not violate the Eighth Amendment. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 19993); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2004).

First, Muhammad has not demonstrated that his broken tooth constituted a "serious medical need." Dr. Tatro saw Muhammad concerning his denture less than two weeks after his tooth broke and did not determine that any treatment was necessary. Moreover, when Dr. Tatro saw Muhammad in August specifically regarding the broken tooth, Dr. Tatro determined that other dental treatment (extraction of two other teeth) was more important and that extraction of Muhammad's broken tooth was "not of any particular concern from a dental perspective."

4

Further, Muhammad has not demonstrated that his need for treatment of his broken tooth was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." To the extent Muhammad disagrees with Dr. Tatro's diagnosis and recommended course of treatment, such a claim is not actionable under the Eighth Amendment.

Second, Muhammad has not demonstrated that either of the defendants acted with deliberate indifference concerning his broken tooth. When Muhammad filed his Request for Medical Services on March 24, 2011, Givens placed his name on the waiting list for routine dental treatment consistent with VDOC procedure. The waiting list for routine dental services at WRSP is approximately five months and Muhammad waited just under that amount of time for his appointment. During the time that Muhammad was waiting, he did not submit any other requests, complaints, or grievances concerning his tooth or any pain that he was experiencing. Muhammad also did not request any emergency dental treatment concerning the broken tooth. When Dr. Tatro saw Muhammad concerning the broken tooth, he extracted the broken tooth at Muhammad's request.

Finally, Muhammad has not demonstrated that he suffered any injury as a result of his delayed dental treatment. As Dr. Tatro observed in August, the broken tooth was not abscessed or infected. Accordingly, the court finds that Muhammad has not demonstrated that the defendants were deliberately indifferent to a serious medical need.

### III.

For the reasons stated, the court grants defendants' motions for summary judgment.

**ENTER:** January 30, 2013.

_____
UNITED STATES DISTRICT JUDGE